GRAHAM & BOYLE *v.* G. LEDDA.

Where an abandonment for a total loss is notified, by the master, to the underwriters, and accepted by their agent, it is binding, and passes the property to the insurers,' if otherwise valid.

The necessity for a sale of a vessel cannot be denied, when the peril, in the opinion of those capable of forming a judgment, make a loss probable, though the vessel may, a short time afterwards, get afloat.

A bill of lading can have no effect until its delivery to the consignee.

The ratification of an abandonment to the agent of the underwriters dates back to the time of the act or contract ratified.

APPEAL from the Sixth District Court of New Orleans, *Howell, J.*
*J. Ad. Rozier* for plaintiffs.    *Cyprien Dufour* for defendant and appellant.

ILSLEY, J.  The object of this suit, instituted in the Sixth District Court of New Orleans, is to recover from the defendant, two flatboats of staves, which the plaintiffs claim as their property.

The defense is, that the property in controversy belongs to the defendant, having received it in due course of trade, from certain parties, at Memphis, who bought it at a sale made by the agent of the assurers.

The plaintiffs were the consignees of the staves, etc., which had been shipped to them from Cairo, by N. W. Graham & Co., on the 8th June, 1859, but, owing to the stranding of the boats on a sand-bar, near Memphis, they, with their cargoes, were abandoned by the master, to the underwriters, the Peoria Marine and Fire Insurance Co., whose agent subsequently sold them, at private sale, to Stephenson, or Stephenson & Park, from whom the defendant derived his title.

The abandonment took place under the following circumstances : Before the departure of the flatboats from Cairo, the insurance company which had insured the boats and cargoes, placed in the hands of the pilot, or master, instructions addressed to him and signed by the proper officers of the company, to the effect that, should any disaster insured against, happen to the property, "you will use all due diligence to save the boats and cargoes, and ship, if practicable, to any of the undersigned agents of this company (among which figures the name of Wm. E. Milton), and should you want assistance or advice, apply to the nearest agent, as soon as the accident happens.

The master made a solemn protest, before a notary public at Memphis, in which, among other things, it was stated, that every exertion had been made to get the boats afloat, even with the aid of a towboat, but in vain. He then proceeded, according to the instructions of the underwriters, to call upon their agent, *W. E. Milton,* and, having stated all the facts of the case, expressed the intention to abandon the insured property, as in the case of a total loss.  In his testimony, this agent says: "I immediately sent W. A. Radford, surveyor for the underwriters, at Memphis, to examine the condition of said flatboats, who reported their condition to be bad ; that the river was rapidly falling, and would leave them on dry land, and advised the sale of said staves at once; and witness accordinly sold the same to J. H. Stephenson; for $17 50 per thousand, which was the

best price he could get for them, and he considered it a good price, under the circumstances."

The abandonment was therefore notified to, and accepted by, the agent of the underwriters, as he took the control of the insured property into his hands. It was competent for the master to act as he did. Abbot on Shipping, 167, *et seq.* And if it was otherwise a valid abandonment, it passed the property to the underwriters. See 2 Phillips on Insurance, No. 1490 ; and the master then became the agent of the underwriters, if they were not already represented by their general agent, W. E. Milton. See the case of *Hooker* v. *Whitney*, 19 La. 267 ; *Phillips* v. *St. Louis Insurance Company*, 11 Al. 459; 3 Kent's Commentaries, p. 331—2.

As there is nothing in the record to show the extent of the powers of the agent of the insurance company, beyond the broad statement in his testimony, that he acted in the premises only upon the general authority as their agent, and, as such, did therein what he considered to the best interest of the said insurance company, it is difficult to determine whether he exceeded his powers in accepting the abandonment, and disposing of the assured property ; but we may very reasonably presume that these acts were within his competency, because, in a letter addressed by the secretary of the company, he does not intimate an objection to the want of power in the agent to act, but gives other reasons which he deems sufficient to invalidate the abandonment and the sale.

In any contingency, a notice of the abandonment to the agent, completed and made their operation final ; and if it was otherwise legally made, the plaintiffs would have, in this instance, no cause of action against the defendant, whether the sale made by the agent was a valid one or not.

That the master acted in good faith, exercised his best discretion for the benefit of all concerned, there can no be question ; and whether the abandonment was made upon the compulsion of a necessity, must be now ascertained. We have seen what was the report of the surveyor, and that is entitled to great weight (see Parsons on Maritime Law, 645—6); the more especially, as this report was made at the special instance of the agent of the insurance company, and by their own surveyor. He considered the boats and cargoes in a perilous condition, and advised an immediate sale of them. Another witness more than corroborates the testimony of the surveyor, and, so far, the conduct of the master in abandoning must be presumed to have been a wise and prudent step, and fully justified by the circumstances. See *Thompson* v. *Mississippi Insurance*, 2 La. R. 239, and numerous authorities therein cited.

But, to take from this testimony and show that the impending peril was not so imminent as to justify an abandonment and sale of the property, it is contended that the flatboats were eventually floated off, and found their way to the terminus *aquo*. This is true ; but the testimony of a witness proves that extraordinary means were used to discharge the boats and put them afloat.

In the case of the *New England Company* v. *The Sarah Ann*, p. 217, 13 Curtis, the Supreme Court of the United States says (speaking of the sale by the captain of the insured vessel) : "Nor can the necessity for a sale be denied, when the peril, in the opinions of those capable of form-

ing a judgment, makes a loss probable, though the vessel may a short time afterwards get afloat."  ·

There is no evidence in the record to show when the bills of lading for the staves were actually delivered to the consignees ; and it is competent for the shipper and owner, even after a shipment has been made, and a bill of lading, making the goods deliverable to a consignee, has been signed, to attach conditions to the assignment, or to revoke it at any time before the bill of lading or the goods are actually delivered to the consignees.    See Abbott on Shipping, p. 328 ; *Mitchell v. Ede, Perry & David-son*, 513, 11 Act. & Ell. 888.    And in *Hepburn v. Lee & Hardy et al.* 14 La. Rep., it was held "that the bill of lading could have no effect until its delivery to the consignee."

We must assume, then, that the shippers, N. W. Graham & Co., on the 25th June, 1859, the date of the letter, written and signed by them, as it is shown, and duly transmitted to the agent of the Peoria Insurance Office, at Memphis, controlled the flatboats Hayden and Ulen, so far as to enable them to make any arrangement with that company, in relation to the abandonment of the assured property ; and it is clear that, by that letter, with a knowledge of all the facts, which they therein state they acquired from C. Boren, the master and pilot of the boats, they approve of the abandonment which the master had made, and ratify it in the most unqualified terms.

This letter, addressed to "Mr. Milton, insurance agent, Memphis," is in the following words :

"June 25th, 1859.    We are informed by Captain Boren that you took possession of flatboats Hayden and Ulen, and sold their cargoes for account of Peoria F. and M. Insurance Company.

We learned this some days ago, since when we have been expecting to hear from you or this insurance company on the subject, with a statement of account and a remittance, either to us direct or the consignees, Graham & Boyle, New Orleans, but are, thus far, without that pleasure. Do us the favor to oblige us fully at once."

It would be difficult to conceive how a ratification of the abandonment, and, indeed, of all the concomitant circumstances, could be more distinctly made, and the legal effect of this ratification is too plain to be questioned. See the cases of *Perotiu v. Cucullu*, 6 La. Rep. 587 ; 1 vol. Hen. (new) Dig. 838, § 11.

And the ratification dates back to the time of the act or contract ratified.    8 vol. Toullier, 514.    Story on Agency, § 239.    *Bloodworth* v. *Jacobs*, 2 Al. 224.    *Dunbar* v. *Bullard*, 2 A. 816.

Whether the sale to the persons, who transferred the property in dispute to the defendant, by the agent of the insurance company, was regular, customary and legal, is exclusively a matter between these purchasers, or the defendant and the underwriters.    All that is necessary now, is to determine whether the rights of the shippers, or even of the consignees, if they had acquired any, which we cannot discover that they had, were divested by the abandonment made by the master.

We think the plaintiffs have failed to show title at any time to the property in dispute, and that, in any contingency, the right of the owner, whoever he was, when the abandonment was made, passed absolutely to

GRAHAM
v.
LEDDA.

the underwriters, who claim nothing in this suit.    The judgment must be reversed.

It is therefore ordered, adjudged and decreed, that the judgment of the Court below be reversed and annulled, and that judgment be rendered in favor of defendant, with costs of both courts.

HOWELL, J., recused.