# THE BANK OF THE STATE OF INDIANA *v.* OLIVER BUGBEE.

*Agency—General and Special.*

Special agents cannot bind their principals beyond the scope of their special authority, and all persons dealing with them are bound to know the extent of their authority.

Special authority to an agent to buy corn, and to load it upon a vessel, does not authorize the agent to borrow the money, upon the credit of the principal, with which to pay for the same.

THIS action is for money lent and advanced by the Plaintiff to the Defendant, at his request.

The Defendant, in 1858, resided at the city of Buffalo, and was owner of the schooner Waurecau. Van Inwagen & Co. were grain brokers, residing and doing business at the city of Chicago.

The Defendant, in the month of July, 1858, sent his vessel to Chicago, and requested Van Inwagen & Co. to buy for him a cargo of corn, and load it upon his vessel. The Defendant did not provide them with funds with which to make the purchase.

They purchased the corn, and put it upon the Defendant's vessel, at Chicago. For the purpose of obtaining the money to make the purchase, they gave to D. R. Holt their draft upon R. S. King, of Buffalo, for the amount on time, acceptance waived, and the vessel's bill of lading of corn as security. In the bill of lading, "Van Inwagen & Co., agents and forwarders," were the shippers, and the corn was to be delivered as addressed in the margin. That address was "Ac't. D. R. Holt, care of R. S. King, Buffalo, N. Y." When the vessel arrived at Buffalo, the Defendant paid to King the amount of the draft, and received the cargo of corn.

In August of the same year, the Defendant again sent his vessel to Chicago, and wrote to Van Inwagen & Co. that he should want them to buy a cargo for her as soon as she should get there, and requested them to telegraph to him the prices of the different grades of corn and wheat. On the 19th of August they tele-

graphed to the Defendant that his vessel had arrived at Chicago, that corn number one was selling there at sixty-nine cents per bushel, and also giving him the prices of other grades of corn, and of wheat. On the same day he telegraphed to them in answer: " Buy prime number one corn."

Van Inwagen & Co. thereupon made an arrangement with the Plaintiff to advance them the money, stating that it was to buy a cargo of corn for the Defendant. The Plaintiff advanced the money to Van Inwagen & Co., who with it bought a cargo of corn, at from seventy to seventy-one cents a bushel, and loaded it upon the Defendant's vessel, and took a bill of lading, in which " Van Inwagen & Co., agents and forwarders," were the shippers, and the address in the margin of which was, " Acc't H. Early, cash'r., care of R. S. King, Buffalo, N. Y." Van Inwagen & Co. delivered this bill of lading to the Plaintiff, together with their draft for the amount of the money advanced upon R. S. King, Buffalo, N. Y., payable twenty days after the date, acceptance waived.

The draft and bill of lading were dated August 21. The vessel sailed from Chicago on that day. On the 19th of August the Defendant wrote Van Inwagen & Co. a letter (which was not received until the 21st), saying that he thought he " could arrange with Cutler so he could draw on him at sight, and then he would save interest, and get a premium for his draft." And on the same day (August 21), the Defendant telegraphed from Buffalo to Van Inwagen & Co., at Chicago, "Did schooner load and leave to-day? Draw as before."

As soon as the Defendant was informed of the price at which the corn was bought, he repudiated its purchase; and, when the vessel arrived at Buffalo, he refused to have anything to do with the corn, by reason of its quality and price.

Mr. King, to whose care the corn was consigned, thereupon, under the directions of Mr. Early, the Plaintiff's cashier, sold it and paid over the proceeds of the sale to the Plaintiff, leaving unpaid of the money borrowed $3,008.57, and it is to recover this balance that this action is brought. At the trial the Plaintiff was nonsuited, the judgment upon which was affirmed by

the General Term of the Superior Court of the city of Buffalo, in which Court the action was brought. The Plaintiff now appeals to this Court.

*John Ganson* for the Appellant.

*Geo. P. Hibbard* for the Respondent.

HUNT, J.—Van Inwagen & Co., of Chicago, Illinois, were the special agents of the Defendant, who resided at Buffalo, for the purchase of a cargo of number one corn, to be loaded upon the schooner Waurecau, at the former place. The authority was in writing, and its legal effect was fixed by its terms.

Van Inwagen & Co. were not the general agents of the Defendant, and the power to bind their principal extended no further than was given by the actual authority conferred upon them. They could not, like general agents, bind their principal, when acting within the ordinary scope of the business they were authorized to transact, although beyond their authority (1 Parsons on Cont. 40, 41, marg.; Story's Ag. §§ 105, 126; Nixon *v.* Palmer, 4 Seld. 398).

They were acting under precise written directions, limited to the particular transaction in question.

All persons dealing with them were, therefore, bound to know the extent of their authority, and to inquire into its limitations (Story's Ag. §§ 81, 83). In the language of Judge Cowen, in North River Bk. *v.* Aymar (3 Hill, 262): "The ground on which the rule rests is familiar. The appointee need not deal with the attorney unless he choose ; and it is very reasonable that he should be bound to inspect the power, when in writing, or learn its language in the best way he can, when it is by parol. On becoming acquainted with it, he shall be holden to understand its legal effect, and must see, at his peril, that the attorney does not transgress the prescribed boundary in acting under it."

The authority to purchase the load of corn, by its terms, gave no authority to Van Inwagen & Co. to borrow the money with which to buy it.

There are, however, certain incidental powers accompanying the appointment of every agent which it is supposed may affect

the present question. Thus, an authority to buy or sell goods, includes an authority to execute the proper vouchers therefor; an authority "to do the needful" in respect to the fulfilment of an award, carries the power to prepare a lease, if required by the award; an authority to sell a horse includes the power to warrant; a power to buy a thing without any statement at what price, includes the power to buy at any price; a power to sell goods includes a power to receive payment on the sale; a power to recover and receive a debt, includes a power to sue and a power to execute a release to the debtor; the possession of a bond by an agent is evidence of an authority to receive the money due upon it (Story's Agency, §§ 102, 103). So it has been held in Louisiana that an agent authorized to buy a cargo for his principal, if no other means or funds are provided, has an incidental authority to give notes, or draw and negotiate bills on his principal for the amount (Perrotin v. Cucullu, 6 Lou. R. 587. See, however, on this point, Paige v. Stone, 10 Metcalf, 160; Taber v. Cannon, 8 Met. 456; Webber v. Prest. of Wms. College, 23 Pick. 302).

In the present case, I think the authority to Van Inwagen & Co. meant simply that they should procure a cargo for this vessel by their own funds, or upon their own credit. It implied, further, that they should be paid for the entire service thus rendered, and that they, or the banker from whom the funds were obtained by them for the purchase, should hold the title to the property purchased, until it was paid for by the principal.

It is not necessary to decide that if Van Inwagen & Co. had purchased the corn of an owner, and had given to such owner a bill of exchange upon the Defendant for the amount, that the Defendant would not have been bound by that act. According to the case of Perrotin v. Cucullu (sup.), he would have been bound. According to the Massachusetts cases, he would not have been bound. The authority to be exercised, either under this principle or upon the principle as I have stated it, is mostly different from a power to the agent to borrow money for the purpose of making the purchase. In addition to the loss of the

right to repudiate the purchase, if in violation of the instructions given, the temptation to the integrity of an agent, and the hazard of loss to the principal by his dishonesty or his misfortunes, are very different in the cases supposed.

The Appellant's proposition involves the broad ground that an authority to a broker to buy and load upon a vessel a cargo of corn or other produce gives to the agent the power to borrow the money upon the credit of the principal, with which to make the purchase. This unites a claim of experimental and dangerous powers.

When he borrows, the agent of right receives the money into his own possession. If he spends it, or loses it, or is robbed of it before a cargo is purchased, the principal is responsible for the bond, equally as if the cargo had been received by him. Many men will honestly discharge the duties of buying and selling merchandise, who will be less faithful in the application of moneys actually in their possession.

Particularly, the money, when received by the agent, would be deposited to his own credit, and drawn upon to pay for the cargo, when the loading was completed.

The money must be borrowed in advance of the purchase, and some time must elapse before the delivery can be completed. Is the principal to be subject to the hazard both of the honesty and the solvency of the agent during this period? If a commission of bankruptcy is sued out in the mean time against the agent, would the principal have a specific lien upon the funds thus borrowed, or would he occupy the position of a creditor simply?

Upon the principles held by the Court below, the cause is plain and open. None of these difficulties will arise.

I think they are sound. I do not find any authority in the books for the proposition claimed by the Appellants, and it would, in my opinion, be a dangerous innovation upon the principles of the law of agency.

If the custom of Chicago could in any event control the principles of law applicable to similar transactions, it certainly does not in the present case upon the evidence presented.

The testimony of the merchants whose evidence was taken is uniform that, in the cases mentioned by them, the money is advanced upon the credit of the parties to the draft, and the security of the property purchased.

This is exactly what the Plaintiff had here.

No one witness testified to the existence of a custom for the agent to borrow money generally on the credit of the party desiring to purchase the cargo, or that would make the principal liable when the draft was not drawn in his name, or upon him, and when the property was not consigned to him.

An argument that this borrowing of money was ratified by the Defendant is drawn from the fact that he telegraphed, "Draw as before."

In the July preceding, the agents, Van Inwagen & Co., had drawn upon R. S. King, Buffalo, for the cargo then purchased. I do not discover any evidence in the case, or that was offered, which tended to show a knowledge by the Defendant that the purchase-money for that cargo was borrowed upon his credit.

The transaction, as presented to the Defendant, was in all respects the same in form as it would have been if Van Inwagen & Co. had themselves advanced, or themselves borrowed the money, and without reference to the credit of the Defendant. It cannot, therefore, amount to a ratification. It would have been hardly allowable that the jury should have given such effect to this despatch, if the Defendant had possessed that knowledge.

The Defendant had, on the 19th of August, written to Van Inwagen & Co. that he thought he could make a different arrangement with one Cutler, so that he could draw upon him at sight, and thus save interest and get a premium for his draft.

For some reason not explained, this arrangement was not perfected, and the Defendant thereupon telegraphs to his agents, "Did the schooner load and leave to-day? Draw as before." I think this was a simple notification that the proposed arrangement had fallen through, and that the agent should act without reference to it. The jury should have given it no other effect. In whatever form drawn, or from whose funds soever the draft

should be taken, the interest to be saved, and the premium to be gained, would inure to the benefit of the Defendant.

All expenses were necessarily to be paid by him, including interest; and a premium on the draft, as well as the saving of interest, would go to its account, in the way of reducing the balance to be paid by him.

No inference is therefore to be drawn against the Defendant from these expressions in his letter.

Judgment should be affirmed.

All concur.

Affirmed.

JOEL TIFFANY,
State Reporter.
