JAMES BLASS and ANNA B. FULLER, as Executrix of JOHN W. FULLER, Deceased, Respondents, *v.* GEORGIANNA B. S. TERRY, Appellant.

1. ASSUMPTION OF MORTGAGE BY GRANTEE IN DEED. The mere presence in a deed, of a clause stating that the grantee assumes and agrees to pay an outstanding mortgage on the premises, does not establish a personal promise or obligation on the part of the grantee to pay the debt of a third party, in the absence of proof that the grantee actually accepted the deed with knowledge of the assumption clause, or at least under such circumstances that he was bound to know its purport and legal effect.

2. RECORDING DEED CONTAINING ASSUMPTION CLAUSE. When a deed contains a provision binding the grantee to become personally responsible for the payment of a pre-existing mortgage, the holder of the mortgage, claiming the benefit of a promise made to a third party, must prove something more than the mere fact that the deed was deposited in the recording office at some time by some one.

3. MORTGAGE ASSUMPTION CLAUSE IN DEED TO MARRIED WOMAN, NEGOTIATED BY HUSBAND — AGENCY. When the grantee in a recorded deed, containing a clause assuming the payment of an outstanding mortgage, is a married woman, proof that her husband negotiated the purchase and took the deed in her name, she furnishing the purchase money, is not

enough to render the grantee personally liable to the holder of the mortgage for payment of the mortgage debt, in the absence of proof that the grantee ever saw the deed or knew its contents, or intended to enter into any obligation to assume the mortgage, or that her husband had authority to so bind her.

4. RATIFICATION. In such a case, there can be no ratification, by the grantee, of the assumption clause in the deed, in the absence of knowledge of the clause and of its legal effect.

5. HUSBAND AS AGENT OF WIFE IN PURCHASE OF LAND. The possession by a husband of authority to buy land in his wife's name, with her money, does not comprehend the power to bind her personally for the payment of an existing lien of a stranger to the deed, by the husband's mere knowledge of or assent to an assumption clause in the deed.

6. APPARENT AUTHORITY OF AGENT. The rule which attributes to an agent the authority which he appears to have has no application to an action against his principal by parties who did not act upon or part with anything on the faith of any apparent authority.

*Blass* v. *Terry*, 87 Hun, 563, reversed.

(Argued April 28, 1898; decided June 7, 1898.)

APPEAL from a judgment of the late General Term of the Supreme Court in the fifth judicial department, entered August 10, 1895, modifying and, as modified, affirming a judgment in favor of plaintiffs entered upon a verdict directed by the court, and an order denying a motion for a new trial.

This action was brought against Georgianna B. S. Terry and Sarah L. Scofield to recover a deficiency upon a sale of lands under mortgage foreclosure, half of which mortgage, it was alleged, had been assumed by the defendants as grantors, in a deed of an undivided one-half of the mortgaged premises. The appellant alone defended, Mrs. Scofield making default.

The facts, so far as material, are stated in the opinion.

*Maurice Charles Spratt* for appellant. The court erred in denying a motion for nonsuit, and in denying defendant's motion for a direction of a verdict for defendant. To prove his case so as to entitle the plaintiff to judgment, it was necessary to put the alleged deed in evidence, or to introduce secondary evidence competent to make the proof. (§ 947, Code Civ. Pro.; 3 R. S. [7th ed.] 2222, § 38.) Proof of delivery and acceptance was essential to maintain the cause of

action. (*Jackson* v. *Phipps*, 12 Johns. 418; *Fonda* v. *Sage*, 46 Barb. 109; *Ford* v. *James*, 4 Keyes, 300; *Day* v. *Mooney*, 4 Hun, 134; *Dey Ermand* v. *Chamberlin*, 88 N. Y. 658; *Kilmer* v. *Smith*, 77 N. Y. 226; *Kelly* v. *Geer*, 101 N. Y. 664.) There was no evidence showing that anything had ever been done by this defendant that could lead to a presumption that she had ratified or confirmed the alleged deed, by way of its receipt and acceptance. It does not appear that she ever took or sought to take possession of said premises. Terry had no power to receive and accept a deed, and could not with that clause in it. (*Derring* v. *Starr*, 118 N. Y. 665.) The question of liability for deficiency must be determined by the judgment of foreclosure and sale. (*Wager* v. *Link*, 134 N. Y. 122.) Proof should have been, but was not, made by the plaintiffs on this trial showing that Fuller and Blass were the identical parties to be benefited by the assumption clause. (*Simson* v. *Brown*, 68 N. Y. 356; *Wheat* v. *Rice*, 97 N. Y. 302; 41 N. Y. 206; 47 N. Y. 242; 69 N. Y. 285; 78 N. Y. 151.) Nothing in the proofs shows or tends to show any ratification of any act of Mr. Terry by Mrs. Terry, by way of accepting such deed. Nothing in the proofs shows that Terry had power to take a deed having in it an assumption clause to Mrs. Terry as grantee. (*McNulty* v. *Hurd*, 86 N. Y. 547; *Glenn* v. *Garth*, 133 N. Y. 35; *Dey Ermand* v. *Chamberlin*, 88 N. Y. 658; *Gifford* v. *Corrigan*, 105 N. Y. 223.) By the foreclosure and sale, the plaintiffs cut off defendant's rights under the deed, and this destroyed the consideration for the covenant sought to be enforced. (*Simson* v. *Brown*, 68 N. Y. 355, 361; *Wheat* v. *Rice*, 97 N. Y. 302; *Dunning* v. *Leavitt*, 85 N. Y. 35; *Crowe* v. *Lewin*, 95 N. Y. 423; *Lorillard* v. *Clyde*, 122 N. Y. 503; *Loeb* v. *Willis*, 100 N. Y. 231; *Ten Eyck* v. *Witbeck*, 135 N. Y. 48.)

*Loran L. Lewis, Jr.*, for respondents. At the close of the evidence the counsel for each of the parties requested the direction of a verdict. By so doing, and not by asking it, they waived the right to have any questions submitted to the

jury, and treated the evidence as presenting only questions of law. Thereupon the court in directing the verdict must be deemed to have determined the questions of fact against the defendant. (*Koehler* v. *Adler*, 78 N. Y. 287 ; *Kirtz* v. *Peck*, 113 N. Y. 222 ; *Reynolds* v. *Miller*, 79 Hun, 113.) The facts as established, work a delivery and acceptance of the deed as matter of law. It is of course quite possible that Mrs. Terry never had the deed in her hand, but the constructive delivery of it to her husband, as her authorized agent, was quite sufficient. (*Cashman* v. *Henry*, 75 N. Y. 103 ; *Gilbert* v. *N. A. F. Ins. Co.*, 23 Wend. 43 ; 35 Am. Dec. 543 ; *Fryer* v. *Rockefeller*, 63 N. Y. 273 ; *Lady Superior* v. *McNamara*, 3 Barb. Ch. 375 ; 49 Am. Dec. 184 ; *Merrill* v. *Swift*, 18 Conn. 257 ; 46 Am. Dec. 315 ; *Lawrence* v. *Farley*, 9 Abb. [N. C.] 371 ; *Fairchild* v. *Lynch*, 10 J. & S. 265 ; *Coolidge* v. *Smith*, 129 Mass. 554.) The judgment record in the foreclosure suit was admissible in evidence. (1 Greenl. on Ev. § 539.) The amendment of the complaint to conform it to the proof as to the amount of the deficiency was plainly within the discretion of the court. (*Frankfurter* v. *Home Ins. Co.*, 6 Misc. Rep. 49.)

O'BRIEN, J. The plaintiffs recovered a judgment against the defendant, a married woman, for the debt of a third party, which, it was claimed, the defendant had assumed and agreed to pay. The original debt was due to the plaintiffs from one Howell, who, on the 24th of August, 1887, gave a mortgage to secure it on certain lands in Ohio, where the debt was created and the parties resided. It is alleged in the complaint that subsequently, and on the 18th day of April, 1888, the defendants purchased a portion of the land covered by the mortgage, and assumed and agreed to pay the same to the extent of $3,750. The allegation is denied by the answer. It appears that the plaintiffs foreclosed the mortgage in the proper court in Ohio, and upon the sale of the property there was a deficiency, which the plaintiffs sued for and recovered of the defendants in this action.

It is not claimed that the defendant ever had any actual transaction with the plaintiffs, or that she ever made any agreement of any kind directly with them for the payment of any part of their debt against Howell. What is claimed is that Howell, in conveying a part of the land covered by the mortgage to the defendant, inserted in the deed a clause binding her to assume and pay the mortgage, and that this promise inured to the benefit of the plaintiffs. Her promise, therefore, to pay this debt rests entirely upon her acceptance of the deed of the Ohio lands. There is no proof in the record that she ever saw the deed, or knew anything of its contents. On the contrary, she testified at the trial that she had never seen it, or knew from any source what its contents were.

The burden of proving a valid agreement by the defendant to pay the debt of another was clearly upon the plaintiffs. Without such proof they were not entitled to recover. The only proof that they produced was the exemplification of the record of the deed from the office of the recorder of deeds of Lucas county, Ohio. This, at most, proved only that at some time the deed had been deposited in that office by some one. It does not even appear when it came to that office. For aught we can know from the record it may have been left there after the commencement of this action. The record thus produced proves a grant of certain land therein described to the defendant, and it contains a clause assuming and agreeing to pay the mortgage thereon. But this clause does not prove a personal promise or obligation on the part of the defendant to pay the debt of a third party, in the absence of proof that she actually accepted the deed with knowledge of the assumption clause, or at least under such circumstances that she was bound to know its purport and legal effect. A clause of that character in such an instrument is, properly speaking, no part of the grant. It is a collateral undertaking, personal in its nature, not relating to the land. Like all other personal contracts it must be shown by the paper itself, or otherwise, that there was a meeting of minds and mutual assent of the parties.

In a unilateral instrument the acceptance of it by the party

to be bound, or the retention of it without objection, would be evidence of assent to its terms; but when a deed of land contains a provision binding the grantee to become personally responsible for the payment of a pre-existing mortgage, the holder of the mortgage, claiming the benefit of a promise made, not to him, but to a third party, must prove something more than the mere fact that the deed was deposited in the clerk's office at some time by some one. There may be constructive delivery of a deed sufficient to vest title in the grantee, but it does not follow that such a delivery is sufficient to create a personal obligation on his part to pay a mortgage which is a lien on the land. In order to make the instrument effective for that purpose, enough must be shown to at least raise a presumption that it was accepted by the grantee with knowledge of the fact that it was not only a grant of the land, but contained a collateral promise on his part to pay a sum of money to some third party.

The record in this case contains no such proof. It was shown that the defendant's husband was dealing in land, and enough was shown to warrant a finding that he negotiated for the purchase of the land in question and took the deed in her name, she furnishing the money to make the payments. But there is no proof that he was authorized to bind his wife personally for the payment of any of the liens existing on the land. What the scope and extent of his authority was, the record does not show. Was it a general authority to buy land, or a specific authority to buy the land in question? The proof gives no answer to these questions.

It seems that both defendants were married women, and the plaintiffs at the trial gave in evidence a paper signed by the defendants and dated April 28th, 1881, ten days after the date of the deed, in which it was recited that they had purchased the land in question. Then follows in the body of the paper an agreement between themselves, whereby Mrs. Terry agrees to loan and advance to the other defendant the share of the purchase price to be paid by the latter, with provisions for the repayment of the loan. All this paper proves is, that

the defendants knew that the land was purchased or was about to be purchased in their names, but it does not show that they had ever seen the deed, or knew that it contained a provision binding them personally to pay the mortgage. The defendant's husband was present when the deed was drawn, but he testifies substantially that he knew nothing of the assumption clause, and never assented to or authorized it.

The most favorable view that it is possible to take of this case for the plaintiffs, is that the defendant's husband was speculating with her money in what were supposed to be oil lands in Ohio, and that he took the deed in her name. If it be assumed that he knew of the assumption clause, although he testified that he did not, and that the deed was never delivered to him, the question still remains with respect to his power to bind his wife personally to pay the mortgage. She is sued upon a personal covenant in a sealed instrument, to pay the debt of Howell to the plaintiffs. She never signed the instrument; never actually accepted it, or even saw it. She never did anything to make the covenant binding upon her personally by ratification. She could not ratify the unauthorized act of her husband without first knowing what the act was, and its nature and legal effect. It cannot be implied from any facts in this case that the husband had any power to bind his wife personally by the clause in the deed, and there is no proof that she in any way ratified his act. It is quite true that if the defendant accepted the deed with knowledge of the assumption clause, she made the debt of a third party her own, and is bound to pay it. But it was an essential part of the plaintiffs' case to prove that the defendant had knowledge of this collateral covenant in the deed, or in some way assented to it. The recording of the deed, at best, was only presumptive evidence of a delivery, and the testimony of the defendant that she never knew of such a deed, or intended to enter into any obligation to assume the mortgage, removes the presumption, and the case is left without any evidence that she agreed to pay the mortgage, or ratified the clause in the deed. (*Albany City Savings Institution* v. *Burdick*, 87 N.

Y. 40; *Kilmer* v. *Smith*, 77 N. Y. 226; *Dey Ermand* v. *Chamberlin*, 88 N. Y. 658; *Townsend* v. *Rackham*, 143 N. Y. 516; *Gifford* v. *Corrigan*, 117 N. Y. 257.) There could be no ratification by the defendant until she had knowledge of the clause in the deed and of its legal effect as a promise on her part. (*Trustees, etc.,* v. *Bowman*, 136 N. Y. 521.)

Nor is she bound by any knowledge that her husband may have had with respect to the covenant, since there is no proof of authority in him to create personal obligations against his wife. Assuming that he had authority of some kind to buy the land with her money, that would not comprehend the power to bind her for the payment of the claims of others upon it by his mere knowledge of or assent to the assumption clause in the deed. This, I think, would be contrary to all the analogies of the law of principal and agent. The agent to sell goods cannot bind his principal by a collateral warranty, unless he had express authority, or authority be implied from the usual custom in the sale of the particular goods. (*Wait* v. *Borne*, 123 N. Y. 592.)

The plaintiffs are seeking to make the defendant liable to them by reason of a transaction with which, so far as appears, they had nothing whatever to do. They are not, therefore, in a position to claim anything from the deed, to which they were not parties, in consequence of any apparent authority in the husband to accept it for his wife. The plaintiffs can take nothing from appearances, since they were not affected by them, and could not have been. They must show that the defendant agreed to pay their debt through some act of her own, or that of her agent duly authorized. (*Edwards* v. *Dooley*, 120 N. Y. 540.) The most that they have shown is that the husband was a mere agent to purchase the land, and that would not by any implication authorize him to pledge the credit of his principal for the satisfaction of a prior lien. (*Bank of Indiana* v. *Bugbee*, 3 Keyes, 461; *Martin* v. *Peters*, 4 Robt. 434.)

The plaintiffs had no transaction whatever with the husband or agent. They are claiming the benefit of a clause in a deed

17

between other parties. This they may do, but they must prove all the facts upon which the legal liability of the defendant to them rests. The rule that sometimes prevails in the law of principal and agent, and which attributes to the agent, not only the authority that he may actually have, but that which he appears to have, has no application to this case, since the plaintiffs did not act upon or part with anything on the faith of any apparent authority. Their action or their rights were in no way affected by the conduct of the defendant's husband. Consequently, in the absence of proof that she made the agreement alleged in the complaint, or that her husband made it for her, with her authority, or that she, with knowledge of all the facts, ratified it, the cause of action stated was not made out. There is no such proof in the record. At most, all that was shown was a state of facts which might bind the husband, in case he had been the grantee named in the deed.

I think, therefore, that the decision of the learned trial judge directing a verdict for the plaintiffs was error, for which the judgment should be reversed and a new trial granted, costs to abide the event.

BARTLETT, J. (dissenting). This action was brought against Georgianna B. S. Terry and Sarah L. Scofield to recover for a deficiency of principal and interest upon the sale of lands in Ohio under mortgage foreclosure, half of which mortgage had been assumed by the defendants as grantees in a deed of an undivided one-half of the mortgaged premises.

Mrs. Scofield did not defend and judgment was taken against her by default, and against Mrs. Terry, the appellant, after trial.

The counsel for the appellant insists there are legal errors disclosed by the record that call for a reversal of the judgment.

It is first urged that one of the plaintiffs, Anna B. Fuller, suing as executrix under her husband's will, is acting by virtue of letters testamentary issued by a probate court in the state of Ohio and that she is without authority to bring suit in this state in the absence of ancillary letters issued to her here.

This objection was taken originally by demurrer to the complaint on the ground that the plaintiffs had no legal capacity to sue, and it was stipulated at the opening of the trial that the demurrer was waived. This stipulation is a final waiver of the objection.

It is next objected that the deed recorded in the state of Ohio, and read in evidence in the absence of the original, was not duly proved under section 947 of the Code of Civil Procedure.

The recorder of Lucas county, Ohio, certifies under his seal of office the instrument to be a true, perfect and complete copy of a certain deed recorded in that county, the record of which is in his custody and control as such county recorder.

The presiding judge of the Court of Common Pleas of Lucas county certifies to the official character of the recorder and to the genuineness of his signature, under the seal of the court.

The clerk of that county certifies to the official character of the presiding judge, that he had been duly elected, and that he was, at the time he signed his certificate, duly qualified, commissioned and acting; this is also under the seal of the court.

It is unnecessary to go further in proving the regularity of the procedure in the state of Ohio as to the recording of this deed.

It is insisted further that, under section 947 of the Code of Civil Procedure, this certified copy of the deed as recorded was only to be read in evidence if the original could not be produced. This criticism would have force if the record contained no evidence tending to show that the original could not be produced.

Terry and wife denied having the deed in their custody, and upon the evidence generally it appears plaintiffs could not produce it. The exemplification of the record of the conveyance from the state of Ohio was properly admitted in evidence.

The next two points presented by the appellant may be conveniently treated together. It is urged that there is no proof of

delivery to, and acceptance by, the defendants of the deed of the mortgaged premises. Also that there is no evidence showing that the defendant Terry ratified or confirmed the alleged deed, or had any notice of the assumption clause therein contained, by which she agreed to pay one-half of the mortgage existing upon the premises.

Both Mrs. Terry and her husband took the stand at the trial of this action, and a careful reading of their evidence leads to the conclusion that it is, to say the least, very unsatisfactory. Mrs. Terry states, near the close of her evidence : "I leave it for you to judge whether my memory is faulty. I have made the statement to-day, I think my memory is faulty ; I don't think you can depend upon me."

Mr. Terry's testimony was exceedingly contradictory, and may have satisfied the trial court that his memory was very unreliable and his evidence of little value.

Before examining more in detail the evidence of Mr. and Mrs. Terry, it may be well to consider the proofs bearing upon their knowledge of this deed and its contents in the order of introduction.

It appears that the husband of the defendant Scofield and Mr. Terry were in negotiation with one Howell for a one-half interest in these Ohio lands. There was some talk of natural gas and oil on the premises.

The result was that Scofield went to Mrs. Terry's house by appointment, and at that time there was executed an agreement, which stated that Mrs. Terry and Mrs. Scofield had purchased from Cornelius C. Howell a one-half interest in the premises in question. This memorandum was signed by Mrs. Terry personally and by Mrs. Scofield per Charles F. Scofield, attorney.

It will be observed that this memorandum recites that the purchase had been made.

It appears that Mrs. Terry was served with the papers in the Ohio foreclosure suit in the state of New Jersey. Service was made by a young lawyer named Brown. He testified that he served the papers on her, and she at the time said

there was no use of suing Mr. Terry because he did this business for her. She said she was perfectly acquainted with the facts.

While Mrs. Terry denies that she made any such statement to Brown, the trial judge evidently believed that she did, on conflicting evidence.

A lawyer from Toledo, Ohio, named Fuller, was placed on the stand. He states that he drew the deed of the mortgaged premises from Howell and wife to the two defendants, and that Terry and Howell were present in his office at the time and gave directions as to its preparation; that Terry and Howell drove out to the property during the day and came back later and got the deed; he says that after the deed was finished, he read it over to Terry and Howell and then delivered it to them.

While Terry swears that he never had the deed in his possession and has no knowledge of its being recorded, he admits he was in Fuller's office at Toledo once and met Scofield and Howell; he also admits that on that occasion he talked with Howell about the mortgage, and swears: "I told him I did not like the question about the mortgage. I told him that I was afraid about the mortgage." Mrs. Terry knew about the proposed purchase of these premises.

Terry took Mrs. Terry with him when this purchase was talked over with Howell. Terry swears that he "told her when the papers were drawn, they would be drawn in her name to protect her for what she had advanced."

At this point in his testimony the witness swears that he did not tell his wife that papers had been drawn, but earlier in his examination he testified that as soon as he returned home he supposed he told his wife what had been done; that was his best recollection.

Mrs. Terry paid on account of the first payment on this land $500. Terry swears that he "told her what it was for, to make payment on that land up there, the land I was going to buy; I had talked with her about it a day or two before that."

It is not profitable to quote from the record all the fragments of testimony that must have had more or less weight with the court in directing a verdict for the plaintiffs.

There is, however, a further fact that should be referred to in this connection as it may have been persuasive, if not conclusive, on both points of delivery and ratification. The deed from Howell to the defendant and Mrs. Scofield was dated April 18th, 1888, and on the 28th day of April, 1888, Mrs. Terry and Mrs. Scofield, in an instrument somewhat inartificially drawn, entered into an agreement whereby Mrs. Terry obligated herself to make the first payment of $1,302.50 on the purchase of the property in question, which is referred to as "fully described in the deed to the above parties of the first and second parts from said Cornelius Howell."

We have here the defendant recognizing the fact over her signature under seal that the purchase of these premises was in the names of Mrs. Scofield and herself, and making specific reference to the deed.

It is difficult to have more satisfactory evidence of the defendant's knowledge of the deed, short of proof that it was seen in her actual custody. Mrs. Terry swears she read this agreement before signing it, no lawyer being present.

In *Coolidge* v. *Smith* (129 Mass. 554) it appeared that a deed containing a recital that the land therein described was subject to a mortgage " which the grantee assumes and agrees to pay " was executed to a woman as grantee without her knowledge or authority, by the direction of her husband, and was by him recorded. She never saw the deed and knew nothing of its contents until after the land was sold by the mortgagee, when she repudiated the deed. Soon after the deed was recorded, she knew that the land had been conveyed to her, and claimed to be the owner of it. The court held that these facts would warrant a finding that she had assented to the purchase, and a ruling that she was bound by the recital in the deed.

It is true there was evidence tending to show that she knew of the mortgage. The decision rests, however, upon ratification.

In the case at bar there is abundant evidence tending to show that defendant ratified her husband's purchase of the land in her name, and had full knowledge of the deed.

This being so, it cures all defects in Terry's express or implied authority to act for his wife in the premises, if any existed.

If Terry was to have executed a deed under seal in his wife's name, then the authority should have been conferred by instrument also under seal; but authority to purchase or sell real estate or other property for a principal can be conferred by parol. (*Worrall* v. *Munn*, 5 N. Y. 229; *Champlin* v. *Parish*, 11 Paige, 405; *Lawrence* v. *Taylor*, 5 Hill, 107; *Mc Whorter* v. *McMahan*, 10 Paige, 386; *Newton* v. *Bronson*, 13 N. Y. 587; *Reeves* v. *Kelby*, 30 Mich. 132; Mechem on Agency, §§ 84, 89, 93; Story on Agency, § 47.)

We have under the directed verdict all facts found in favor of plaintiffs, as, at the close of the evidence, the counsel for each party asked that the court direct a verdict, and neither requested to submit any question to the jury. (*Koehler* v. *Adler*, 78 N. Y. 287; *Kirtz* v. *Peck*, 113 N. Y. 222.)

There are some additional points in the appellant's brief which we have duly considered.

The judgment and order appealed from should be affirmed, with costs.

PARKER, Ch. J., GRAY, HAIGHT and MARTIN, JJ., concur with O'BRIEN, J., for reversal; VANN, J., concurs with BARTLETT, J., for affirmance.

Judgment reversed and new trial granted, costs to abide the event.