198

DEAR v. GUY et al.

No. 6348.

United States Court of Appeals for the District of Columbia.

Argued Feb. 8, 1935.

Decided March 25, 1935.

Motion to Modify Denied May 3, 1935.

Albert W. Fox and George E. Sullivan, both of Washington, D. C., for appellant.

Stanton C. Peelle, Paul E. Lesh, Dale D. Drain, Jerome F. Barnard, F. B. Warder, Thomas H. King, and H. L. McCormick, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice,· and HITZ and GRONER, Associate Justices.

PER CURIAM.

This appeal involves an unfortunate family quarrel. Appellant, who was plaintiff, is the widow of Richard B. Dear, who died in 1909. By his will she received, absolutely, property and money in excess of $500,000. She has two children, a son and daughter. Both are married. From the commencement of her widowhood to January, 1931, she had made gifts to the son and daughter well in excess of $200,000 each. In January, 1931, she created a trust, of which appellees Guy and McCormick are trustees.

At that time her property consisted of an estate for the life of her son in a dairy farm in Loudoun county, Va., approximately $75,000 of negotiable securities, and an interest in a certain mining property in Utah. The interest in the mining property was evidenced by a sales contract on which, at the time of the creation of the trust, the purchaser was required to make sixteen annual payments of $6,250. These payments the trustees have treated as income. The evidence shows that the son, to whom the mother was devotedly attached, was constantly in need of large sums of money and as constantly pressing his mother for assistance. The daughter was equally importunate. The result was that the estate of more than $500,000 had been reduced to approximately $150,000. About the time of the creation of the trust, the son's wife had obtained a divorce and an alimony decree of $500 a month, and the dairy· farm, which had been conveyed to him by his mother and on which he had expended large sums of money, was running behind at the rate of five .or six thousand dollars a year. His demands upon his mother became more urgent, and the daughter, sensing the inevitable, persuaded her mother to create the trust and secured for her the services of the defendant Guy, an attorney, for this purpose.

In 1933 this suit was brought by the mother to set aside the deed creating the trust, on the ground that she was induced to execute it as a result of false representations of her daughter and concealment of facts by Guy.

The deed creates an irrevocable trust and provides that the income shall be distributed, $200 per month, during minority, to two children of the son for their education and support. It further provides for the payment to the son of $50 per month during his life, and the remainder of the net income to the mother during her lifetime, "and in case the net income is at any time, in the absolute discretion of the trustees, insufficient for the comfort, welfare and maintenance of the donor (the mother), the trustees may pay and deliver to her from time to time, such further amounts from the principal of this trust as said trustees shall deem proper and necessary" (a provision which we trust will be liberally exercised for the mother's benefit for the few remaining years of her life); upon the death of the mother, all of the trust property passes to the daughter, except certain personal property on the farm and so

much of the money received from the mining interest installments as it is necessary to reserve to carry out the provisions for the son and his two children.

The grounds on which the court below was asked to set aside and annul the trust deed were that the mother intended to make what is called a "management trust" or an "agency trust," and not an irrevocable transfer of her property; and the testimony was directed largely at showing that the daughter in seeking to get more than her fair share of her mother's estate had, in conspiracy with Guy, the attorney, induced her to sign the deed without knowledge of its contents. We have read all of the evidence and, so far as it relates to the family history of the three principals after the death of the father, it tends, we think, to show on the part of the children a consistent and selfish purpose to enrich themselves at the expense of their mother; but it is impossible to tell from the evidence whether the mother's obvious purpose to treat them equally has been carried out. No one can say accurately to which of them the greater share has gone. But without regard to this, we think the evidence sustains the finding of the trial judge that there was no legal fraud. He heard the witnesses, saw them, and had a better opportunity than we of judging the truthfulness of their statements. He has found there was no coercion or misrepresentation on the part of any of appellees— no such urging, constraint, or persuasion as to subvert the sound judgment or real purpose of appellant—and equally no act of omission or concealment tending to mislead her in the execution of the deed. He refers in his findings to the fact that the mother gave Mr. Guy certain written instructions in reference to the preparation of the deed, and that at least four drafts of the paper were prepared and submitted to her and discussed with her. He finds as a fact that the deed was prepared in accordance with these instructions; that its contents were explained to her; and that, at the time of its execution, its legal effect was fully understood by her; that she was at all times in full possession of her mental faculties and experienced in handling her own business. His conclusion of law is that she did not execute the deed under a mistake as to its contents or its legal effect, but that it represented the exercise of her own free and independent will; and on this conclusion he dismissed the bill.

In such circumstances we have said time and again that, while we are not bound by the chancellor's findings of fact, we will not disturb them unless the evidence shows that his findings are clearly wrong. Pollock v. Jameson, 63 App. D. C. 152, 70 F.(2d) 756, 759.

Affirmed.