## CONSOLIDATED REALTY CORPORATION v. DUNLOP.

### No. 7505.

United States Court of Appeals for the District of Columbia.

Argued May 8, 1940.

Decided June 17, 1940.

L. M. Denit and Thomas Searing Jackson, both of Washington, D. C., for appellant.

G. Thomas Dunlop, of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and STEPHENS and RUTLEDGE, Associate Justices.

## GRONER, C. J.

This suit was begun in 1935 as an action at law and was submitted to the court below on written waiver of jury. At the close of the evidence, the trial judge held that the cause should be transferred to the equity side, and an order was entered accordingly. The parties then filed equity pleadings.[1] In April, 1939, after the effective date of the new rules, the case was again brought to trial. The judge stated his findings and entered judgment for defendant, and this appeal followed.

The testimony shows that in September, 1925, William T. Galliher, a resident of Washington City, agreed with Guaranty Realty Company to exchange an unencumbered piece of real estate and a small sum of money for the equity in three improved lots in Asheville, North Carolina, which were then subject to a mortgage debt of $60,000, evidenced by promissory notes of that corporation. The testimony also shows a definite understanding that Galliher was not to assume the mortgage debt, but after the contract of exchange was finally consummated, the recorded deed to Galliher recited that the property was free of encumbrances except the debt secured by the mortgage—"which the party of the second part [Galliher] assumes and agrees to pay". Galliher took possession of the property and collected the rents, paid the interest, and made substantial payments in reduction of the principal debt. He died in Washington City in 1929 and left a will appointing his widow and Charles Galliher, his son, as executors and trustees. The widow declined to serve, and Charles Galliher and Federal-American National Bank were granted letters of administration with the will annexed. Subsequently they were succeeded by the defendant here (Dunlop), who became administrator d. b. n. c. t. a. The former administrators had continued the payment of interest and made some payments in reduction of the principal on

the notes until maturity. Thereafter they obtained extensions from the holder, in which the trustees joined, by the terms of which they "covenant and agree that they are legally obligated, as Trustees and Administrators C. T. A., of the Estate of the said Wm. T. Galliher, for the entire principal balance," etc.

The facts in relation to the closing of the contract for the exchange of the properties are these: Galliher was in Washington and the grantor company in Asheville. The latter made a deed to the Asheville property and either sent it by mail or delivered it by hand to Galliher in Washington. The latter sent it for examination to his lawyer in North Carolina, who ascertained a defect in the description of the property, and returned it to the grantor for correction. The latter rewrote the deed, executed it, and about a month later it was delivered to the clerk of the court for recordation. Some years after Galliher's death, when the administrators reached the conclusion that the equity in the property was worthless, they stopped payments and the property was shortly thereafter foreclosed. A deficiency of something over $20,000 resulted, to recover which this suit was brought only against the successor administrator of Galliher's estate. The trial judge made the following findings of fact: that there was no agreement, either oral or written, between Galliher and Guaranty Company at the time of the conveyance to him, or at any other time, that he was to assume the mortgage indebtedness, and that Galliher never did assume or agree to pay the notes; that the covenant in the deed, which purported to show that Galliher assumed the debt, did not correctly state the contract, and that the language was inserted by mistake and without the knowledge of Galliher; that the deed was placed on record without his having seen it or knowing that it contained such an assumption clause; that the agreements between the holders of the notes and the former administrators c. t. a. and trustees under the will of Galliher, that they would stand obligated to pay the promissory notes in consideration of their extension, were executed upon the supposed authority of an order of the probate court which did not grant or purport to grant authority to the administrators and trustees to assume or pay the notes; and that

---

[1] This much occurred before the effective date of the new Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

the order of the probate court was passed upon averments of a petition which did not disclose to the court the fact that the promissory notes were not the obligations of the decedent and that he was not a party to them as maker, indorser, or otherwise; that Galliher in making payments of interest or on account of the principal did not assume or intend to assume the mortgage indebtedness or to become obligated for the payment thereof. The court further found that the obligation under the notes matured in 1930 and that no agreement was thereafter made between Guaranty Company, the maker of the notes, and Galliher, the purchaser of the property, within the statutory period of limitations, and that the corporate existence of Guaranty Company ceased in 1928, and it had no corporate existence in 1935 when the action was brought.

On the basis of the facts found, the court held that, since Galliher was not a party to the promissory notes and had never assumed or agreed to pay them, the order of the probate court did not give his administrators authority to bind his personal estate for their payment, and that the extension which the administrators procured did not legally have that effect; and that the present administrator d. b. n. c. t. a. of Galliher's estate is not liable to the plaintiff upon either the notes or the agreements purporting to extend them.

We are of opinion that the decree of the court below was correct and must be affirmed.

■ *First.* As the case was finally tried and decided after the effective date of the new rules (Rule 86), we think it is in order to refer to Rule 52(a), in which we are told that findings of fact are not to be set aside unless clearly erroneous. That was always the rule in this court. Dear v. Guy, 64 App.D.C. 314, 78 F.2d 198. We have, therefore, carefully considered the testimony of all the witnesses. No substantial objection appears to the competency or relevancy of any of it, and, giving it the effect to which it is entitled, it shows that the second deed was lodged in the clerk's office without Galliher's ever seeing it. The first deed, which was delivered or sent to him, was not produced and doubtless was destroyed, and there is nothing to show that it, like the second deed, contained the assumption clause. The deed was prepared by the grantors, was not read or signed by Galliher, and according to the testimony of the grantors, the assumption clause was inadvertently included and in that respect was not in accord with the real agreement of the parties. Neither in the District of Columbia nor in North Carolina is the purchaser of an equity of redemption in mortgaged lands personally liable for the mortgage debt unless he expressly or impliedly agrees to pay it. Shepherd v. May, 115 U.S. 505, 6 S.Ct. 119, 29 L.Ed. 456; Harvey v. Kinston Knit. Co., 197 N.C. 177, 148 S.E. 45; Henry v. Heggie, 163 N.C. 523, 79 S.E. 982. And see Elliott v. Sackett, 108 U.S. 132, 2 S.Ct. 375, 27 L.Ed. 678.

■ Here the deed contained a recital that Galliher assumed the debt and, even though the grantor alone signed it, the recital, perhaps, was enough to bind the grantee, in the absence of testimony showing fraud or mistake. But where the agreement to assume the debt is denied, and the circumstances under which the deed was executed and recorded show no actual knowledge of the existence of the assumption clause or any antecedent agreement to that effect, there was an issue of fact whether Galliher actually agreed to be bound, and the judge's finding against such an agreement, supported by the evidence, is conclusive on appeal.

■ "The principle that a party must be presumed to know the contents and meaning of a written instrument which he takes as evidence of title does not extend so far as to conclusively impose on the grantee of mortgaged lands a collateral personal liability for the mortgage debt, founded upon a clause inserted in the deed without his knowledge and expressing an agreement which he has not made." Raffel v. Clark, 87 Conn. 567, 89 A. 184, 185.

Almost the precise case arose in California in Fishback v. Forkner Fig Gardens, 137 Cal.App. 211, 30 P.2d 586. The deed poll, containing the assumption clause, was recorded by the title company, and the grantees did not discover the clause until seven years later. They were held not liable for the deficiency. The court relied upon the following very apt quotation from Blass v. Terry, 156 N.Y. 122, 50 N.E. 953: "The record thus produced proves a grant of certain land therein described to the defendant, and it contains a clause assuming and agreeing to pay the mortgage thereon. But this clause does not prove a personal promise or obligation on the part of the defendant to pay the debt of a third

party, in the absence of proof that she actually accepted the deed with knowledge of the assumption clause, or at least under such circumstances that she was bound to know its purport and legal effect. A clause of that character in such an instrument is, properly speaking, no part of the grant. It is a collateral undertaking, personal in its nature, not relating to the land. Like all other personal contracts it must be shown by the paper itself, or otherwise, that there was a meeting of minds, and mutual assent of the parties. In a unilateral instrument, the acceptance of it by the party to be bound, or the retention of it without objection, would be evidence of assent to its terms; but when a deed of land contains a provision binding the grantee to become personally responsible for the payment of a pre-existing mortgage, the holder of the mortgage, claiming the benefit of a promise made, not to him, but to a third party, must prove something more than the mere fact that the deed was deposited in the clerk's office at some time by some one." Cf. Elliott v. Sackett, 108 U.S. 132, 142, 2 S.Ct. 375, 27 L.Ed. 678; Drury v. Hayden, 111 U.S. 223, 4 S.Ct. 405, 28 L. Ed. 408.

■ *Second.* Appellant insists that, notwithstanding the assumption clause in the deed was placed there by mistake, since Galliher went into possession and used the property and took the rents, and thereafter paid the interest on the debt and some of the principal, his administrator will not now be permitted to deny his assumption of and personal liability for the debt. Keller v. Ashford, 133 U.S. 610, 10 S.Ct. 494, 33 L.Ed. 667; Osborne v. Mortgage Co., 8 App.D.C. 481; Dille v. Hammond, 61 App. D.C. 234, 59 F.2d 1048, together with a number of state cases, are cited to sustain this contention. It must be conceded that the language of some of these cases lends color to the argument, but in our opinion they are not in point. They dealt with conduct of grantees which showed assent to the personal obligation expressed in the assumption clause, and in the circumstances the courts were unable to infer that the contract had not been made. Of course, payments may be made under conditions which indicate recognition of personal obligation, e. g., in response to a legal demand upon a grantee conscious of the assumption clause. Osborne v. Mortgage Co., supra. The evidence in this case, however, shows that Galliher knew nothing about the clause, and there is only a single piece of evidence to show his attitude and the circumstances under which he made the payments. A letter written shortly before his death shows that he received a notice of interest due and that he paid with apologies for delay. On the other hand, there is positive testimony, which the trial court believed, that he negotiated the exchange with the distinct understanding that he was not to assume the debt. Payments of interest and principal were not inconsistent with the absence of personal obligation. So long as the equity had any value, it was naturally in Galliher's interest to prevent foreclosure, and he may well have desired to increase the value of his equity by partially removing the lien. Elliott v. Sackett, 108 U.S. 132, 142, 2 S.Ct. 375, 27 L.Ed. 678; Willard v. Wood, 135 U.S. 309, 10 S.Ct. 831, 34 L.Ed. 210; Osborne v. Mortgage Co., supra; and see the cases collected in 94 A.L.R. 1329. After Galliher's death, the payments of interest and to some extent on the principal by his administrators may have been due to their confidence in the investment, on the one hand, or, on the other, to their ignorance of the fact that the assumption clause in the deed was placed there mistakenly, for it was not until this suit was begun that the true facts in relation to the original contract between Galliher and the grantor of the property were disclosed.

■■ *Third.* In January, 1932, the administrators c. t. a. filed a petition in the probate court, asking to be permitted to extend a number of notes made by Galliher in his lifetime and held by various persons. Paragraph 4 of the petition recited: "that the said William T. Galliher is the owner of certain real estate in Asheville, North Carolina, which is subject to mortgage or deed of trust to secure indebtedness, as follows * * *" Then followed the description of the indebtedness. And the prayer of the administrators was: "That they further be authorized to renew the three notes described in the fourth paragraph of this petition, and from time to time extend the time of payment of such balance as may remain unpaid thereon."

An order of the probate court authorized the renewal of the notes and the extension of time of payment, and the administrators and trustees under Galliher's will entered into an agreement with the holders reciting that in consideration of the exten-

sion they should be legally obligated as trustees and administrators c. t. a. for the entire principal balance due thereon. This agreement, appellant insists, is binding on the present administrator of the estate, and this suit is brought to obtain a judgment against him in his official character. Appellant admits in its brief that an administrator or executor may not bind the estate upon his contract, though for the benefit of the estate, unless expressly authorized by statute or in the will or, according to some authorities, by the probate court. This unquestionably is a correct statement of the law. Griggs v. Nadeau, 8 Cir., 221 F. 381. But appellant says there is a recognized exception to the rule and that this embraces the promise of an executor or administrator to carry out a contract originally entered into by the testator. But even if this exception be conceded, we fail to see how it helps appellant, and the cases cited on the brief do not change our view in this respect. If Galliher had ever been personally obligated, the promise of the administrators might have had some effect on the tolling of limitations, Williston on Contracts, Sec. 194, but this case must turn upon the fact that he was not personally liable at the time of his death, and his will gave no authority to his executors to create such liability. See Haskell v. Manson, 200 Mass. 599, 86 N.E. 937, 128 Am.St.Rep. 452; Seip v. Drach, 14 Pa. 352, 356; Blanton v. Forrest City Mfg. Co., 138 Ark. 508, 212 S.W. 330.

Nor did the order of the probate court confer that authority. The administrators' petition to the court showed merely that Galliher was the owner of certain real estate subject to a certain mortgage indebtedness. The petition did not inform the court that the notes were not the obligations of Galliher and that he had not assumed payment of them, and the court's order goes no further than to authorize their renewal and extension. But since it now clearly appears, as was probably not known at the time, that Galliher, in addition to the fact that he was not the maker of the notes, had never assumed them, the order did not and could not confer an authority on the administrators to make them a liability of his estate. The decree of the probate court was based wholly on the statement in the petition that it was desirable that the notes should be extended. The then administrators may have been of opinion that the notes were a valid claim against Galliher's estate, but in this, as we have seen, they were mistaken, and hence they were without authority to give the notes validity as debts against the estate. The order of the probate court was not a decision upon a case of submission to the court of a question on its merits, but was a consent in advance to an administrator who had no right to bind his testator's estate. See Griggs v. Nadeau, supra; Kelley v. Milan, 127 U.S. 139, 159, 160, 8 S.Ct. 1101, 32 L.Ed. 77. Schouler on Executors and Administrators, Sec. 256. What rights, if any, the holders of the notes acquired against the trustees of the estate, we are not concerned with in this suit, since the trustees are not parties to this proceeding.

In the light of what has been said, it is not necessary to pass on the other questions, limitations and power to sue, decided by the lower court and urged on appeal.

Affirmed.