**LEONARDO et al. v. LEONARDO et al.**

No. 8576.

United States Court of Appeals
District of Columbia.

Decided Nov. 6, 1944.

Mr. Herman Miller, of Washington, D. C., for appellants.

Mr. James J. Laughlin, of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

MILLER, Associate Justice.

Alexander Leonardo, a physician, and his wife Alleen, the appellees, own a building on Thirteenth Street, Northwest, in Washington; in the lower or ground floor of which he maintains his office; while he, his wife and children, for several years, have lived in the first floor apartment, above. Alexander and Alleen own, also, a farm in Maryland, where his family spend the hot summer months. In April, 1942, the family moved to the Maryland farm, but Alexander continued to use a bedroom, the kitchen and bath of their living quarters, when his professional duties required his presence in the city. In connection with the office telephone an extension is maintained in the first floor apartment so that at all times incoming calls from patients and others desiring the services of Dr. Leonardo can be promptly received and answered.

It became necessary, therefore, for Dr. Leonardo to make some arrangements whereby his office telephone could be answered, and messages relayed to him during the time when he was absent from his office and on occasions when he was with his wife and children on the farm. About the same time appellant, Salvatore. Leonardo, a lawyer, and brother of Alexander, had an advantageous opportunity to sell the home which he and his wife, Wynelle, occupied at 811 Marietta Place, Northwest. He inquired of his brother Alexander whether he had an apartment for rent. Alexander replied that he did not, but told him of his predicament regarding telephone calls and, after some negotiations, it was arranged that Salvatore and Wynelle should occupy a portion of the first floor apartment and should, both of them, assume the obligation of answering the telephone and relaying calls to Alexander. Alleen disapproved of this arrangement because she and Wynelle had had difficulties in the past, and she anticipated more in the future. Trouble soon commenced; complaints and recriminations came from both families. When Alexander's family returned from their farm in the fall, Salvatore and Wynelle refused to vacate the apartment and Al-

exander was forced to rent a house for his family. Things went from bad to worse; quarrels, disturbances and physical assaults occurred; finally, on February 15, 1943, Alexander served a written notice to quit and on March 16, 1943, reoccupied his apartment. Then followed a final violent altercation and the unwelcome guests departed.

In the District Court appellants sought an injunction requiring appellees to restore to them possession of the apartment. The Court found as facts concerning the legal relationship existing between the two brothers: "8. That on the 9th day of May, 1942, pursuant to the verbal understanding with the defendant physician set forth in paragraph 9 hereof, the plaintiffs were permitted to occupy and did take possession of a certain portion of said first floor apartment as their residence. 9. That it was verbally understood and agreed that, as a condition and obligation of their occupancy of said apartment, the plaintiff's wife, and also the husband, would answer and receive all telephone calls and messages coming to the physician's office after office hours and for that purpose were to use said extension telephone located in said apartment and relay or otherwise communicate said calls and messages to said physician. It was further understood and agreed that said plaintiffs were to have the use of said telephone for their personal calls and convenience and, therefore, further obligated themselves not to install a telephone of their own in said apartment. It was further understood and agreed that said plaintiffs would pay to said defendants the sum of Forty Dollars ($40.00) per month, which amount represented the cost of the operation and maintenance of said apartment by the defendants. 10. The Court finds that there was no definite time fixed for the termination of the verbal agreement whereby said plaintiffs were permitted to occupy said apartment as set forth in paragraph 9 hereof. 11. That the plaintiffs, disregarding their obligation to answer and receive telephone calls coming to said physician, failed and refused to answer said telephone and receive and relay calls therefrom to the said physician. On the contrary, the Court finds as a fact that numerous calls from patients and from a surgeon associated with the said physician went unanswered and important and urgent messages intended for said physician were not received by said plaintiffs, or either of them, and communicated to said physician. Furthermore, the Court finds that the plaintiff husband on occasions muffled the said extension telephone in such manner as to deaden the sound of the bell and thus prevented incoming calls from being heard and received therefrom. The Court further finds that in violation of their obligation said plaintiffs caused to be installed in said apartment a telephone of their own. 12. That the defendant physician frequently complained to the plaintiffs of their failure to carry out their obligation to answer said telephone and verbally demanded that they surrender possession of said apartment. Their demand was as frequently refused and ignored and the plaintiffs persisted in their indifference to telephone calls coming over said extension telephone and did not properly answer or receive the same. 13. That on the 15th day of February, 1943, the defendants served a written notice to quit on the plaintiffs in the words and figures, to wit: 'This is to notify you that I wish you to vacate the premises at 5801 13th St., N. W. within 30 days from date as I wish to occupy it myself and my family in order to properly conduct my business as a physician.' 14. That the plaintiffs advised the defendants that they would not comply with said written notice and surrender possession of the premises to them at the expiration of thirty days from the date thereof and that they intended to ignore said notice until such time as they could find an apartment that met their requirements as to location, space and rental. 15. That the defendants, when so advised as stated in paragraph 14 hereof and prior to the expiration of said notice, found several suitable apartments or housing accommodations for said plaintiffs within the location specified by said plaintiffs with the same or comparable space and accommodations as contained in said first floor apartment and agreed, if the rental exceeded the amount of forty dollars being paid by said plaintiffs, to pay the excess. The Court finds that said plaintiffs arbitrarily refused to accept either of said apartments, although available, and declined to vacate said first floor apartment. * * * 18. The Court finds that said defendants sought in good faith to recover possession of said property for their immediate and personal use and occupancy as a dwelling and that this need was pressing in that said physician was required to maintain telephone service at all hours for the use of his pa-

tients and associates and that said physician was unable to obtain secretarial service for that purpose, although he was willing to pay a monthly charge of $25.00 therefor. The Court finds that ever since the defendants took possession of said bedroom, kitchen and bath they have been using the same as their dwelling. 19. The Court finds that the plaintiffs have refused and still refuse to remove their belongings from said living room and also from the garage attached to said apartment building in response to said written notice to quit and frequent verbal requests of the same tenor. 20. That said plaintiffs very shortly after the grievances complained of found housing accommodations and are now residing therein."

The Court concluded that (1) appellants have an adequate remedy at law; (2) it is not the office of an injunction to restore possession to one who has suffered from alleged unlawful entry and dispossession; (3) the Emergency Rent Act was not intended to change the law upon this point; (4) a mandatory injunction should be denied when its issuance will cause injury to the defendant and no benefit or very little benefit to the plaintiff, especially when money damages will afford compensation.

 The record amply supports, the findings of fact. The first and fourth conclusions of law are sound and support the judgment. We need not pass upon the others.[1] The Rent Act was not intended to restore possession to occupants holding as did these appellants, against the owner of the premises, under circumstances such as those of the present case.[2]

Affirmed.

---

[1] White v. Sparkill Realty Corp., 280 U.S. 500, 510, 50 S.Ct. 186, 74 L.Ed. 578; Consolidated Realty Corp. v. Dunlop, 72 App.D.C. 273, 275, 114 F.2d 16, 18.

[2] D.C.Code (1940) § 45—1605(b).