**MERANDO v. MATHY et al.**

**No. 8930.**

United States Court of Appeals

District of Columbia.

Argued Oct. 24, 1945.

Decided Dec. 10, 1945.

Mr. P. J. J. Nicolaides, of Washington, D. C., with whom Mr. William F. Kelly, of Washington, D. C., was on the brief, for appellant.

Messrs. G. R. Linkins and Thomas Morton Gittings, both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and CLARK and PRETTYMAN, Associate Justices.

CLARK, Associate Justice.

This is an appeal from a judgment of the District Court awarding damages in the amount of $5,144.79 to the plaintiffs in an action for breach of contract. The case arose from these facts: On June 4, 1943, plaintiffs entered into a subcontract with the defendant, appellant here, under which they were to perform plumbing and sheet metal work incident to replacing downspouts on the old Post Office and Court House building in Pittsburgh, Pennsylvania. The defendant held the prime contract for this work with the Federal Works Agency. Among the conditions incorporated in the subcontract between the plaintiffs and defendant was an agreement that the defendant company would perform the cutting and patching and erect the scaffolding necessary to "open up" the building and facilitate the work of the plaintiffs' plumbers and sheet metal men.

In essence, the breach charged by the plaintiffs was that the defendant failed to perform satisfactorily his obligation to clear the way for the craftsmen, thus forcing the plaintiffs' foreman to close down the job. In reply, the defendant contends: (1) That it was the plaintiffs' foreman who forced defendant's employees to cease cutting and otherwise making ready for the plumbers, and (2) that at the time plaintiffs stopped work there was plumbing and sheet metal work to be done that did not require any further preparatory labor by the defendant.

■ In seeking a reversal the appellant argues that the court below erred in not finding as a matter of law that the plaintiffs had breached their contract. The defendant's claim on this point centers around the conduct of one Curtin, plaintiffs' foreman on the job. The defendant alleged and sought to prove that, after the introduction of Pittsburgh plumbers on the job, Curtin informed the supervisor in the employ of defendant that thenceforth plumbers, rather than the Post Office maintenance men previously used by defendant, would have to do the cutting. Thus, the defendant charges, the plaintiffs compelled the work stoppage which in turn constituted the grounds for the plaintiffs' withdrawal from the job.[1]

We have been unable to find anything in the record that would justify our supporting the defendant's contention on this point. It is true that Curtin testified that he "shut the job down", but only after having related the conditions which made the shut down imperative. The defendant offered no proof at the trial which would permit a finding that plaintiffs' man, either by word or deed, set up any real bar against the defendant in proceeding with the cutting work.[2]

In support of the contention that there was ample work for the plaintiffs' men, without additional cutting, the defendant relies mainly on the testimony of plumbers subsequently employed on the job and the fact that separate time sheets for cutting were required to be kept by the firm which finally completed the plumbing work. The District Court found that all of the cutting done by the contractor who completed the job was performed by plumbers and in such fashion as to result in most of the cost finding its way into the general time sheets. The plaintiffs supported their position on this point with the testimony of a consulting engineer who appraised the condition of the work after the shut down and before the new contractor came on the job. The court below appears to have been fully justified in finding that the weight of the evidence favored the plaintiffs on this item.

■■ The fact that the defendant had the right, under the terms of the subcontract, to terminate it on three days' written notice is no protection in the premises since its breach by nonfeasance preceded his efforts to set aside the agreement according to its terms, and rendered it impossible for plaintiffs to perform.[3] The defendant seeks to set up the rule in United States v. Gleason,[4] as giving the unqualified right to terminate the contract at his discretion, and apparently without regard to his own conduct. It is perhaps sufficient to point out that the right to terminate, embodied in the contract, was extinguished by prior termination through breach.

■ There appears to be no error in the District Court's refusal to find that the plaintiffs had no right to make additional demands before resuming the work. Once the fact of breach and the responsibility for it had been ascertained, the court had no occasion to rule on subsequent negotiations of the parties. Similarly, the evidence and findings resulting from the trial, obviated the necessity for considering the elements of defendant's counterclaim.

■ Though there is direct conflict in the testimony regarding the amount of work completed under the subcontract, we do not observe that there was any clear error in the finding as to the percentage of

---

[1] It seems significant to note that plaintiffs had been carrying on the job with "out of city" plumbers whose union rules did not require that they do the cutting. On August 7, 1943, defendant visited the job and insisted that plaintiffs' foreman take on more plumbers to speed the work. At this time plaintiffs' foreman warned defendant that if Pittsburgh plumbers were brought to the job they would insist on doing the cutting at their regular pay scale. Despite this warning, defendant proceeded to arrange for local plumbers to report to the job.

[2] A careful examination of the record shows that from the beginning the prime contractor failed to discharge the degree of responsibility which would reasonably be expected from a person occupying his status in relation to the whole job. The District Court found that defendant first placed a supervisor on the job who was not competent for such an assignment, and that even he left on August 1, leaving the defendant's share of the work in the hands of Post Office employees.

[3] Columbus Ry., Power & Light Co. v. City of Columbus, Ohio, 249 U.S. 399, 412, 39 S.Ct. 349, 63 L.Ed. 669, 6 A.L. R. 1648; Carnegie Steel Co. v. United States, 240 U.S. 156, 165, 36 S.Ct. 342, 60 L.Ed. 576.

[4] 175 U.S. 588, 20 S.Ct. 228, 44 L.Ed. 284.

completion, or the amount of profit calculated thereon. The Federal Rules of Civil Procedure require that we accept the District Court's findings of fact unless they be shown to be clearly erroneous.[5]

Affirmed.

---

[5] Federal Rules of Civil Procedure, rule 52(a), 28 U.S.C.A. following section 723c. See also: Consolidated Realty Corporation v. Dunlop, 72 App.D.C. 273, 114 F. 2d 16; Dear v. Guy, 64 App.D.C. 314, 78 F.2d 198.