**MINMAR BUILDERS, INC., a corporation,
Appellant,**

v.

**BELTWAY EXCAVATORS, INC., a District
of Columbia corporation, Appellee.**

No. 4209.

District of Columbia Court of Appeals.

Argued June 3, 1968.

Decided Oct. 24, 1968.

Herman M. Braude, Washington, D. C., with whom Marvin P. Sadur, Washington, D. C., was on the brief, for appellant. Francis J. Pelland, Washington, D. C., also entered an appearance for appellant.

*Milton M. Burke,* with whom Leonard Joseph Keilp, Washington, D. C., was on the brief, for appellee.

Before MYERS, KELLY and FICK-LING, Associate Judges.

FICKLING, Associate Judge:

This is an appeal from a judgment of the trial court, sitting without a jury, awarding appellee $2,730.28—the balance of the contract price—and dismissing appellant's counterclaim.

Minmar Builders, Inc., appellant, entered into a contract with the District of Columbia Government for the construction of the West End Branch Library. Subsequently, appellant subcontracted excavation work to Beltway Excavators, Inc., appellee. This action was brought on the subcontract which provided that appellee would do the excavating on the project as "shown on the drawings and Section 2 of the specifications," with certain specifically defined work included and excluded. A term of the subcontract was the requirement that, after the basement walls had been completed by appellant, appellee would return to the job and "[b]ackfill the building supplying the M–1 material as shown and directed in the specifications."

After eighty-five percent of the subcontract had been completed and paid for, appellant requested appellee to return and proceed with the backfill operation around the perimeter of the walls. Appellee, although willing to perform, refused to proceed with the backfill until appellant fulfilled its obligation under the contract. Appellee contended that according to the plans and specifications a fine filter material (consisting of selected sands) was required to be placed by the appellant prior to or simultaneously with the M–1 fill (a tight compacting fill consisting of sand, gravel, and clay), and that its contract expressly excluded from appellee's duties the supplying of any fills other than M–1 and M–2 and any work not shown in Section 2 of the specifications. Appellant disagreed and did not place the fine filter material around the walls, claiming that the plans and specifications did not require it. Subsequently, appellant itself placed M–1 fill around the perimeter of the wall, without using fine filter material. Appellee brought this action, claiming the balance of the contract price.

The trial court, after hearing extensive testimony and seeing many exhibits, found, among other things, that the drawings and specifications required appellant to install fine filter material around the perimeter of the basement walls; that the orders of appellant to appellee to complete the backfilling without prior or simultaneous placement of fine filter material by appellant constituted a material, substantial, and constructive change, requiring written approval by the District of Columbia Government; that appellee was legally justified in refusing to complete its subcontract because,

absent written approval of change, its duty of performance was dependent on the placement of the fine filter material by appellant, and appellant in failing to perform prevented appellee from proper performance.

Appellant makes three basic contentions. First, the trial judge applied the wrong criterion for his interpretation of what the plans and specifications called for. Second, the judge erred in failing to find an express, or at least implied, contractual obligation upon appellee to continue with performance even though it disputed appellant's interpretation of the contract. Third, the court erred in permitting appellee to *abandon* the contract.

■ As to appellant's first contention, the plans and Section 2 of the specifications of the prime contract were expressly incorporated into the subcontract, and normal rules of interpretation of contracts should be employed in seeking to understand their provisions. The standard to be applied in such cases was well stated in Slice v. Carozza Properties, 215 Md. 357, 368, 137 A.2d 687, 693 (1958):

> As we turn to the authorities, we may note first that the theory of "objective law" of contracts has been almost universally adopted by this time. The written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding, or unless there is fraud, duress or mutual mistake. "* * * where there has been an integration of an agreement, those who executed it will not be allowed to place their own interpretation on what it means or was intended to mean. The test in such a case is objective and not sub-

jective. * * * Williston * * * Sec. 94, page 294, says: 'It follows that the test of a true interpretation of an offer or acceptance is not what the party making it thought it meant or intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.' " [Citations omitted.]

■ However, where there is some lack of clarity in the terms of the contract, other testimony regarding the intent of the parties and the meaning of the terms in that context may be required, and will properly be admitted in order to reach an objective interpretation. Homes Oil Realty Co. v. Hechinger Properties Co., D.C.Mun. App., 182 A.2d 62, 63 (1962); Curtis Builders v. General Floor Service Co., D.C.Mun.App., 107 A.2d 705 (1954).[1]

In the instant case, the trial judge emphasized frequently it was his intention to use these standards in interpreting the contractual obligations of the respective parties. The record indicates that he heard extensive testimony from various persons attempting to clarify the plans, looked to the documents themselves, and reached his finding only after a thorough review of all of the evidence. Appellant's argument that the judge relied on any single part of the evidence before him[2] is not supported by the record, which reflects conflicting testimony.

■ Appellant's second contention is that, because the provisions of the "changes" and "disputes" clauses of the prime contract were incorporated by reference through Section 2 of the specifications into the subcontract, appellee was required to continue with performance even if it disputed appellant's interpretation of the contract. Even assuming, without deciding, that these clauses were incorporated by reference, we agree with the trial judge that

1. As to the standards to be applied, see generally 17A C.J.S. Contracts § 294 (1963), and Corbin on Contracts, § 538 (1960 ed.).

2. Appellant refers to the architect's testimony on behalf of appellee that the plans required the placement of fine filter material.

the "changes" clause, Article 3 of the prime contract, requires that any changes in the plans or specifications be made by *written* order of the government contracting officer. No such order was issued in this case. Secondly, the "disputes" clause, Article 15 of the prime contract,[3] expressly provides that the procedure it sets forth will apply "[e]xcept as otherwise specifically provided in this contract, * *." Under the Special Stipulations to the prime contract, Paragraph 18 specifically deals with subcontracts, and subparagraph (e) of Paragraph 18 provides as follows:

> (e) The Government of the District of Columbia will not undertake to settle any differences between the contractor and his subcontractor or between subcontractors.

Clearly, then, by the very terms of the "disputes" clause, this stipulation preempts any obligation appellee might otherwise have had to follow the procedure provided by the "disputes" clause for prime contractors—that clause is inapplicable to subcontractors who, of course, by subparagraph (a) of Paragraph 18, have in no way entered into a contractual relationship with the District of Columbia. Because of the express language in the prime contract itself, noted by the trial judge, this court cannot accept appellant's argument that appellee was obliged to perform in accordance with appellant's interpretation of the contract.

Appellant's third argument is that the court erred in permitting appellee to *abandon* the subcontract. However, the trial judge in fact did not so hold. Rather, in his written findings, the judge ruled that

"the [appellee's] duty of performance was dependent upon the existence of conditions shown by the drawings and specifications. The [appellee] was therefore legally justified *in refusing to complete* its contract, because of the default of the [appellant] in failing to have fine filter installed, which *prevented* the [appellee] from properly performing the subcontract." (Emphasis supplied.)

■■ There is no doubt that hindrance or prevention of performance constitutes a breach of contract, absent a provision expressly contemplating such hindrance or prevention.[4] As this court stated in Horlick v. Wright, D.C.Mun.App., 104 A.2d 825, 827 (1954), "It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance * * * he cannot take advantage of the failure." [Citation omitted.][5]

Here, the trial court's findings indicated that the hindrance or prevention found was of two kinds. First, an owner (or prime contractor) "commits a breach of a construction contract by changing plans and specifications otherwise than the contract permits and ordering substituted performance." Oberer Construction Co. v. Park Plaza, Inc., 179 N.E.2d 168, 170 (Ohio Com. Pl.1961).[6] Here, as has been pointed out above, appellant sought to order a different performance from that called for in the plans and specifications, without the required written change order, and thereby prevented appellee from properly performing.

■ Second, where an "act to be done by one party can be done only on a corre-

---

3. Article 15. Disputes.—Except as otherwise specifically provided in this contract, all disputes concerning questions arising under this contract shall be decided by the contracting officer subject to written appeal by the contractor within thirty (30) days to the Contract Appeals Board, whose decision shall be final and conclusive upon the parties thereto, subject to the limitations of Sec. 3(b) (2) of Reorganization Plan No. 5 of 1952. In the meantime the contractor shall diligently proceed with the work as directed.

4. Corbin on Contracts, § 947 (1960 ed.).

5. And see Matthew A. Welch & Sons, Inc. v. Bird, D.C.App., 193 A.2d 736 (1963).

6. Corbin on Contracts, § 947 (1960 ed.); and see 17A C.J.S. Contracts § 468 (1963).

788

sponding act being done * * * by the other party, an obligation by the latter to do * * * the act or thing necessary for the completion of the contract will be necessarily implied." 17A C.J.S. Contracts § 468, at 647 (1963); Bernstein v. Fagelson, 38 Ga.App. 294, 143 S.E. 237 (1928). In the instant case, appellee could not complete his performance unless and until appellant placed the fine filter material against the basement wall simultaneously with appellee's laying the M–1 fill. Where performance by one party is dependent on concurrent or precedent acts of the other, the contractor may be excused from full performance where the evidence shows that the other party has failed to perform the essential condition precedent. Merando

v. Mathy, 80 U.S.App.D.C. 281, 152 F.2d 21 (1945), cert. denied, 327 U.S. 804, 66 S.Ct. 966, 90 L.Ed. 1029 (1946).[7] The evidence in the record sustains the trial court's finding of such failure by appellant. Given the clearly demonstrated willingness of appellee to perform when possible and the fact that appellee had already completed eighty-five percent of the job, there can be no doubt that the failure of appellant to comply with the terms of the contract was the sole reason for appellee's nonperformance. Under such circumstances full performance by appellee should be excused.

Finding no error in the holding of the trial court, we

Affirm.

7. And see Melwin Construction Co. v. Stonewall Construction Co., D.C.Mun.App., 113 A.2d 108 (1955).