**Gudrun I. LUCHSINGER, Appellant,**

v.

**Peter Casper LUCHSINGER, Appellee.**

**No. 10529.**

District of Columbia Court of Appeals.

Argued Jan. 6, 1977.

Decided Sept. 22, 1977.

---

1. *Ledbetter v. United States*, D.C.App., 350 A.2d 379 (1976).

2. *Ledbetter v. United States, supra* note 1.

Rolland G. Lamensdorf, Washington, D. C., for appellant.

John Alexander, Washington, D. C., for appellee.

Before KELLY, FICKLING* and KERN, Associate Judges.

PER CURIAM:

Appellant Gudrun Luchsinger alleges as error on this appeal the trial court's denial of her motion to adjudicate her former husband in contempt for disregarding a court order to render an accounting of his income pursuant to a property settlement agreement which had been made a part of their

* Associate Judge Fickling was a member of this division at the time the case was argued, but died before entry of this opinion.

divorce decree. The motion was denied on a finding that appellee Peter Luchsinger rather than being in willful violation thereof, had substantially complied with the prior court order. At the same time, the court decided to construe Paragraph 4(a) of the property settlement agreement, which contained an escalation clause used to calculate changes in the level of alimony and child support, because it had become obvious that its meaning was at the heart of the controversy between the parties which for reasons of judicial economy and fairness needed to be promptly and completely adjudicated. Appellant challenges as well the power of the trial court in this litigation to interpret Paragraph 4(a) of the property settlement agreement and the court's ultimate construction of that paragraph.

Dr. Peter Luchsinger, a dual citizen of Switzerland, his native country, and of the United States, married Gudrun Luchsinger in June 1956. The couple had two children. After their separation in June 1967, the Luchsingers entered into a property settlement agreement which was ultimately incorporated into a judgment of absolute divorce on February 19, 1969. Dr. Luchsinger remarried and returned to Switzerland in 1972. Appellant's subsequent motions seeking judgment for alimony arrearages in the sum of $4,500, child support arrearages of $2,400, an accounting of her former husband's income for the individual years 1972 and 1973[1] and counsel fees and expenses, were thereafter granted.

Dr. Luchsinger returned to the United States on May 11, 1975. A series of motions, counter-motions and withdrawn motions regarding the level of alimony and child support culminated in a hearing concerning appellant's remaining contempt motion for the accounting and for counsel fees. As the hearing progressed, it became obvious that the resolution of the controversy turned on the interpretation of the term "adjusted gross income" as used in the

1. By the time of the hearing the parties were also seeking income figures for 1974.

fourth paragraph of the property settlement agreement. That term is crucial because increases and decreases in support payments are calculated as a percentage of that figure.

The specific language used in the property settlement agreement is:

4. The husband shall pay to the wife for her support and maintenance the sum of Four Hundred Fifty ($450.00) Dollars per month, the first of such payments to be made on the 1st day of September, 1968, with a like payment on the 1st day of each and every month thereafter until the wife shall die or remarry or the husband shall die, whichever event shall first occur. The payments of support to the wife shall be subject to the following:

A. In any year in which the husband's adjusted gross income (which shall mean income from all sources, American and foreign, whether earned or unearned less those deductions permissible on a U.S. Federal Income Tax Return to determine the adjusted gross income) exceeds the sum of $22,000.00, he shall pay to the wife an additional sum equal to ten (10%) percent of that portion of said income which is in excess of $22,000.00.

B. In any year in which the husband's adjusted gross income (as defined above) shall be less than $22,000.00, the payments specified in this paragraph shall be decreased in direct proportion to the husband's decreased adjusted gross income.

\* \* \* \* \* \*

D. The husband shall furnish the wife with proof of his income tax return as actually filed by him within thirty (30) days after the filing of such return each year.

Dr. Luchsinger urges a strict reading of the phrase "adjusted gross income" as a term of art with the specific meaning set forth in the Internal Revenue Code, 26 U.S.C. § 62 (1954). Under this reading, most of Dr. Luchsinger's income received while he was residing in Switzerland from 1972 to 1974 was subject to a $20,000 exemption (later $25,000) from gross income on his federal income tax return pursuant to 26 U.S.C. § 911(c)(1) (1954).[2] Obviously this reading results in a minimal adjusted gross income figure for purposes of calculating support payments.[3]

Appellant argues that the parties understood the term "adjusted gross income" to mean "income from all sources, American and foreign" less the amount spent in the cost of doing business (i. e., employee business expenses, moving expenses, retirement funds for the self-employed, sick pay, long term capital gains, and the usual deductions from income allowed on the Treasury Form 1040 under 26 U.S.C. § 62). She contends that the parties contemplated a narrow group of deductions and did not read the term broadly so as to include exemptions.

In a memorandum decision, the trial judge, with little elaboration, agreed with Dr. Luchsinger that the term "adjusted gross income" was a technical one to be construed strictly under the Internal Reve-

2. 26 U.S.C. § 911 (1954), reads in pertinent part:

Earned income from sources without the United States

(c) Special rules.—For purposes of computing the amount excludable under subsection (a), the following rules shall apply:

(1) Limitations on amount of exclusion.—The amount excluded from the gross income of an individual under subsection (a) for any taxable year shall not exceed an amount which shall be computed on a daily basis at an annual rate of—

(A) except as provided in subparagraph (B), $20,000 in the case of an individual who qualifies under subsection (a), or

(B) $25,000 in the case of an individual who qualifies under subsection (a)(1), but only with respect to that portion of such taxable year occurring after such individual has been a bona fide resident of a foreign country or countries for an uninterrupted period of 3 consecutive years.

3. For example, under Dr. Luchsinger's reading, if he earned $22,000 in the United States and $30,000 in Switzerland in one year, the amount due under the escalation clause would be 10% of $30,000 less the $20,000 exemption, or $1,000. Under Mrs. Luchsinger's reading she would take 10% of *all* income over $22,000, or $3,000 in the example above.

nue Code. She awarded appellant $1,850.20 under the escalation clause for the years 1972 to 1974, allowing the annual exemption of $20,000 against the husband's liability under Paragraph 4(a).

 While appellant's argument about the parties' understanding could not be dismissed summarily simply because the term "adjusted gross income" has a definition under the Internal Revenue Code, we find no need to elaborate on the parties' intent since they were themselves careful to define the meaning of "adjusted gross income" in their agreement.[4] That definition did not contemplate the specific exemption (26 U.S.C. § 911) upon which Dr. Luchsinger seeks to rely. Rather, it was agreed that Dr. Luchsinger was to report to his ex-wife *all* of his income, including foreign income, less the *deductions* allowed on the Form 1040, so that escalation of support payments could be calculated. The obvious purpose of Paragraph 4 was to provide the wife with 10% of the increment of income Dr. Luchsinger would enjoy as he matured in his profession, less the reasonable expenses incurred in building his business. To allow the foreign income exemption to undercut the base income figure from which escalation is derived would defeat the clear terms of what was very much a bargained for provision.

We affirm the trial court's disposition of appellant's motion to hold her husband in contempt and the conclusion that under the circumstances of this case the meaning of Paragraph 4A of the property settlement agreement was in issue. We disagree with the holding that despite the parties' definition in the agreement of the term "adjusted gross income" as "income from all sources, American and foreign, whether earned or unearned less [those] deductions . . .", appellee may exclude income received from sources outside the United States because for federal tax purposes such income is excluded from gross income. The unambig-

uous language of the agreement is to the contrary, and "[i]n the absence of ambiguity, a written contract duly signed and executed speaks for itself and is binding upon the parties thereto." *Gagnon v. Wright*, D.C.App., 200 A.2d 196, 198 (1964). *See also Minmar Builders, Inc. v. Beltway Excavators, Inc.*, D.C.App., 246 A.2d 784, 786 (1968); *E. P. Hinkel & Co., Inc. v. Manhattan Co.*, 165 U.S.App.D.C. 140, 143, 506 F.2d 201, 204 (1974).

That part of the judgment on appeal which relates to the award under the escalation clause is reversed and the case is remanded for further proceedings in accordance with this opinion.

*So ordered.*

---

4. Paragraph 4A, provides in part:
   (which shall mean *income from all sources*, American and foreign, whether earned or unearned less those *deductions* permissible on a

U. S. Federal Income Tax Return to determine the adjusted gross income) . . . . (Emphasis supplied).